**Adam MUSHERO, etc., Plaintiff, Appellant,**

**v.**

**H. Rollin IVES, Commissioner, Maine Department of Human Services, Defendant, Appellee.**

No. 91–1347.

United States Court of Appeals, First Circuit.

Heard Sept. 6, 1991.

Decided Nov. 19, 1991.

Mary T. Henderson, Pine Tree Legal Assistance, Inc., for plaintiff, appellant.

Mary B. Najarian, Asst. Atty. Gen., with whom Michael E. Carpenter, Atty. Gen., and Christopher C. Leighton and Thomas D. Warren, Deputy Attys. Gen., were on brief, for defendant, appellee.

Before CAMPBELL, TORRUELLA and SELYA, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Adam Mushero, representing plaintiff class,[1] appeals from the judgment of the United States District Court for the District of Maine denying his request for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 against the Maine Department of Human Services ("DHS"). Mushero claimed that DHS violated federal law when it intercepted his federal tax refund in order to satisfy his alleged indebtedness for Aid to Families with Dependent Children (AFDC) payments previously made for his children. The district court held that DHS had properly imposed an AFDC debt which it was entitled to enforce by intercepting Mushero's federal tax refund. We affirm.

## I. BACKGROUND

Mushero and Dawn Frasier are the parents of two children born out of wedlock. In 1988, Frasier—living with the children and apart from Mushero—applied for AFDC. As a condition for AFDC eligibility, Frasier assigned her rights to child support to DHS. Between April 1988 and April 1989 Frasier received $5,246 in AFDC payments for the benefit of her and Mushero's children. During this time, although no court or administrative order required him to do so, Mushero paid Frasier $25 per week per child for the support of their children.

In February 1989 DHS notified Mushero of a hearing scheduled in April 1989 to determine the amount of his AFDC debt and to determine "whether a current child support obligation should be established." A hearing was held, and DHS issued a decision establishing, as to Mushero, an AFDC indebtedness of $2,696, and setting

---

1. The class was defined as:

    All parents in the State of Maine who have or will have their federal income tax refunds offset under 42 U.S.C. § 664 in order to pay the State of Maine debt for Aid to Families with Dependent Children that accrued pursuant to 19 M.R.S.A. § 495 and that was or will be established pursuant to 19 M.R.S.A. § 498.

Mushero's current support obligation at $42 per week per child. The administrative hearing officer denied Mushero's appeal from the decision.

On August 5, 1989 Mushero and Dawn Frasier were married and the AFDC grant was closed. In September 1989 Mushero received notice that DHS would seek to offset past due child support from his federal income tax refund. Relief from this proposed action was denied on administrative review. DHS then intercepted the entire amount of Mushero's federal tax refund for 1989 (2,293.09), and applied this toward his AFDC debt.

Mushero filed simultaneous actions in the United States district court and in Maine state court. In the latter action he sought review of DHS' final agency decision on state law grounds. The state law action has since been stayed by agreement. In the district court, before a magistrate judge, the parties filed cross motions for judgment on the stipulated record. Mushero also filed a motion for class certification. Mushero sought declaratory and injunctive relief against Maine's practice of imposing AFDC debts on plaintiff class and intercepting federal tax refunds to satisfy these debts, claiming that this practice contravenes federal law and, therefore, deprives him of his federal rights in violation of 42 U.S.C. § 1983. The magistrate judge recommended class certification and the district court affirmed. The magistrate judge also recommended that the court grant appellee's summary judgment motion and deny appellant's like motion. The district court followed the recommendation; it also denied appellant's requests for oral argument and certification of supposedly doubtful issues of state law to the Maine Supreme Judicial Court. This appeal followed.

## II. DISCUSSION

Both parties agree that, under federal law, any right DHS has to impose an AFDC debt on Mushero is derived from the support rights the custodial parent assigned to DHS as a condition for receiving AFDC. Both parties also agree that Maine law determines what support rights a cus-todial parent has and what rights the parent can assign to DHS. DHS' rights are the same child support rights that the custodial parent has in Maine.

The issue, then, is whether the AFDC debt charged to Mushero and offset from his federal income tax refund was encompassed within the support rights that Dawn Frasier, the custodial parent, assigned to DHS. Mushero makes three arguments in support of his contention that DHS did not have the authority to impose an AFDC debt on him. First, Mushero argues that under Maine law, when paternity is not an issue, a custodial parent has no right to be reimbursed by a non-custodial parent for child support expenses accruing prior to a court order or administrative procedure establishing a child support obligation. Alternatively, he contends that Maine law is unclear on this issue, and asks this court to certify it to the Maine Supreme Judicial Court. Second, Mushero argues that even if this court finds that under Maine law retroactive child support rights are recognized and hence assignable by the recipient of an AFDC grant, Maine's AFDC statutes would still violate federal law because they provide an administrative means for collecting retroactive child support debts for AFDC recipients while not providing the same service for non-AFDC recipients. Finally, Mushero argues that the federal AFDC program did not contemplate the collection of retroactive child support from non-custodial parents and thus does not authorize Maine to use AFDC to enforce such an obligation. We affirm the district court and hold that DHS was authorized to impose on Mushero an AFDC debt reflecting a retroactive child support obligation. Before addressing each of Mushero's arguments, we first examine the federal and state statutory scheme underlying the AFDC program.

### A. *Statutory Scheme*

The AFDC program is a cooperative federal and state program. It was established under the Social Security Act to provide financial assistance to families with dependent children. As a condition of AFDC

eligibility, custodial parents must "assign the State any rights to support ... which have accrued at the time such assignment is executed." 42 U.S.C. § 602(a)(26).[2] The support rights assigned "constitute an obligation owed to such State by the individual responsible for providing such support." 42 U.S.C. § 656(a)(1).[3] The amount of the obligation owed to the state is the "amount specified in a court order which covers the assigned support rights, or if there is no court order, an amount determined by the State in accordance with a formula approved by the Secretary...." 42 U.S.C. § 656(a)(2). To enforce this obligation, Congress authorizes state agencies to withhold federal tax refunds in "an amount equal to the pastdue support" owed to the state. 42 U.S.C. § 664(a).[4] "Pastdue support" is defined as "the amount of a delinquency, determined under a court order, or an order of an administrative process es-

tablished by State law, for support and maintenance of a child...." 42 U.S.C. § 664(c).

In compliance with federal law, Maine requires AFDC recipients to assign their support rights to the state. 19 M.R.S.A. § 512.[5] As contemplated by 42 U.S.C. § 656(a)(1), the payment of AFDC creates a debt due the state by the non-custodial parent that should be equal to the support rights assigned. If a court order for support exists, then "the debt due the department ... shall be the amount established under that order." 19 M.R.S.A. § 495(1)(B). Where no court order for support exists, a non-custodial parent's debt to the state is determined in one of two ways. First, the debt due to the state may simply be declared equal to "the amount of public assistance paid." 19 M.R.S.A. § 495(1)(A).[6] Second, the state can hold a hearing to establish a periodic payment to satisfy the

**2.** Section 602(a)(26) provides that a State plan for aid and services to needy families with children must

provide that, as a condition of eligibility for aid, each applicant or recipient will be required—

(A) to assign the State any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time such assignment is executed

....

42 U.S.C. § 602(a)(26).

**3.** Section 656(a)(1) provides:

The support rights assigned to the State under section 602(a)(26) of this title or secured on behalf of a child receiving foster care maintenance payments shall constitute an obligation owed to such State by the individual responsible for providing such support. Such obligation shall be deemed for collection purposes to be collectible under all applicable State and local processes.

42 U.S.C. § 656(a)(1).

**4.** Section 664(a)(1) provides in pertinent part:

Upon receiving notice from a State agency administering a plan approved under this part that a named individual owes past-due support which has been assigned pursuant to section 602(a)(26) or section 671(a)(17) of this title, the Secretary of the Treasury shall determine whether any amounts, as refunds of Federal taxes paid, are payable to such individual.... If the Secretary of the Treasury finds that any such amount is payable, he

shall withhold from such refunds an amount equal to the past-due support, shall concurrently send notice to such individual that the withholding has been made ... and shall pay such amount to the State agency

....

42 U.S.C. § 664(a)(1).

**5.** Section 512 provides:

The receipt of public assistance for a child shall constitute an assignment by the recipient to the department of all rights to support for the child including any support unpaid at the time of assignment as long as public assistance is paid.

The recipient shall also be deemed to have appointed the commissioner as his or her attorney in fact to perform the specific act of endorsing over to the department any and all drafts, checks, money orders or other negotiable instruments for support of the child.

19 M.R.S.A. § 512.

**6.** Section 495(1)(A) provides:

When no court order of support has been established, a payment of public assistance for the benefit of the dependent child creates a debt due the department from the responsible parent in the amount of public assistance paid. When a periodic support payment has been established under section 498, the debt shall be limited to the amount stated in the decision.

19 M.R.S.A. § 495(1)(A).

Even if a court order of support exists, a parent is not relieved of "any liability for a debt which previously had accrued under [§ 495(A)]." 19 M.R.S.A. § 495(1)(B).

responsible parent's current support obligation under sections 442 and 443 and to determine the parent's debt accrued under section 495. 19 M.R.S.A. § 498.[7] In such a case the debt owed to the department under section 495 is limited to the amount determined in the hearing held pursuant to section 498. 19 M.R.S.A. § 495(1)(A).

In this case DHS determined Mushero's debt pursuant to section 498. Section 498 directs the state to hold a hearing to establish both a current support obligation and "the responsible parent's [AFDC] debt accrued under section 495." At the hearing, a non-custodial parent is given the opportunity to show that the parent's AFDC debt—representing benefits expended on behalf of the children—should be reduced in accordance with that parent's gross income. See Maine Department of Human Services, Division of Support Enforcement, Notice of Hearing and Debt, Case No. 73164201P. The decision after Mushero's hearing indicates reliance upon the Maine Child Support Enforcement Manual in calculating his AFDC debt. The non-custodial parent's financial circumstances are thus considered in establishing the AFDC debt

under section 498. Because section 498 takes these circumstances into account as well as the child's needs, an AFDC debt established under section 498 resembles the child support obligation that the custodial parent would have had a right to enforce prior to that parent's assignment of this right to the state.[8]

Mushero argues that the AFDC debt established under section 498 nonetheless imposes an obligation on him that is greater than the obligation the custodial parent had a right to enforce and could have assigned. According to Mushero, the debt imposed pursuant to section 498 amounts to a debt for retroactive child support—that is, child support for periods prior to the formal establishment of a child support obligation. Mushero contends that under Maine law, a custodial parent does not have a right to be reimbursed for child support for periods prior to the formal establishment of a support obligation. Consequently, Mushero argues, the AFDC debt imposed on class members in this case violates federal law because it is not derived from the child support rights the custodial parent assigned to the state. DHS, on the other

---

7. Section 498 provides:

> If no court order of support exists, the department, by hearing, on its own behalf or on behalf of another state or another state's instrumentality, may establish a periodic payment to satisfy the responsible parent's current support obligation under section 442 and 443, establish the responsible parent's debt accrued under section 495, and establish the responsible parent's obligation to maintain health insurance coverage for any dependent children and to provide for any medical expenses incurred on behalf of the dependent children....

19 M.R.S.A. § 498.

8. Maine has statutory child support guidelines which provide criteria for determining a parent's child support obligation in any court action or administrative proceeding in which a child support order is issued. See 19 M.R.S.A. § 311 et seq. These guidelines take into account the parent's gross income as well as the child's entitlement and needs in calculating a total child support obligation. 19 M.R.S.A. § 316. In addition, under the guidelines, a court or hearing officer can consider the special financial circumstances of a parent in determining that parent's responsibility. See, e.g., 19 M.R.S.A. § 316(4)(C) (limiting a non-primary

caregiver's obligation to 10% of his weekly gross income if his annual gross income is less than the federal poverty guideline, or if the income is insufficient to meet work-related expenses and other basic necessities).

To the extent that the procedure for establishing a non-custodial parent's AFDC debt under section 498 considers factors similar to those considered in Maine's non-AFDC related child-support guidelines, then the AFDC debt established under section 498 resembles the child support obligation that the custodial parent would have had a right to enforce prior to her assignment of this right to the state.

Calculation of a non-custodial parent's AFDC debt under section 495, however, does not consider a parent's ability to pay as a relevant factor. Department of Human Services v. Roy, 585 A.2d 813, 816 (Me.1991). This raises a question as to whether an AFDC debt determined under section 495 is consistent with the federal scheme since it imposes a debt on a non-custodial parent that may be greater than the obligation that parent would have owed to the custodial parent under Maine's statutory child support guidelines and that the custodial parent could have assigned to the state pursuant to an AFDC grant. As Mushero's debt was determined under section 498 and not under section 495, we do not address this question.

hand, contends that custodial parents are entitled to retroactive child support in Maine.

### B. *Retroactive Support Rights under Maine Law*

■ Under Maine law, all parents have a general duty to support their children. 19 M.R.S.A. § 442 ("[e]very man shall support his wife and child"); 19 M.R.S.A. § 443 ("[e]very woman shall support her child; and her husband when in need"). This duty exists whether or not a court or administrative order exists establishing a formal obligation. *See, e.g., Wood v. Wood,* 407 A.2d 282, 286 (Me.1979) (a court ordered child support decree "terminate[s] the common law parental support obligation, *substituting* in its place a statutory duty to support") (emphasis added).

Mushero contends that sections 442 and 443, while identifying a general duty for parents to support their children, do not create a right to collect retroactive support for periods before the time enforcement of the general duty is sought. Mushero presents two arguments in support of his contention. First, he states that there are no reported cases in Maine in which a custodial parent or a child has sought reimbursement under sections 442 and 443. Second, Mushero argues that the absence of a right to retroactive support in sections 442 and 443 is evident when these sections are read *in pari materia* with other statutes relating to child support. Specifically, Mushero asserts that both section 498— which establishes administrative procedures for determining support obligations and AFDC debt—and section 498–A— which sets up administrative procedures for determining support obligations in non-AFDC cases—authorize DHS to " 'establish a periodic payment to satisfy the responsible parent's *current* support obligation under sections 442 and 443 ...' "

(emphasis added). He concludes that "in enacting these statutes, the Legislature clearly considered that the obligations created under sections 442 and 443 were for current support. He interprets "current support" to include only prospective support.

While Mushero is right that there appear to be no reported cases in Maine in which a custodial parent sought retroactive support pursuant to sections 442 and 443, his conclusion requires a strained reading of these statutes. Mushero would interpret these statutes as imposing only a conditional duty of support on parents. Thus, Mushero would paraphrase the language of the statutes to read that mothers or fathers have a duty to support their children *only if* their children—or their children's representatives—obtain a formal declaration of this duty in an administrative or judicial proceeding. This reading is contrary to the plain meaning of the statutes. Both sections 442 and 443 state unconditionally that men and women *shall* support their children. 19 M.R.S.A. §§ 442, 443 (emphasis added). Moreover, section 448 authorizes children to enforce this duty and provides that when "the State ... furnishes support to an obligee, it has the same right as the obligee to whom the support was furnished, for the purpose of securing reimbursement and of obtaining continuing support." 19 M.R.S.A. § 448.[9] Thus, the statutory scheme contemplates that an obligee not only has a right to "continuing support," but also a right to secure "reimbursement" for past support.

Even if we attribute significance to the absence of case law and conclude that it is unclear whether a custodial parent in Maine could collect retroactive child support from a non-custodial parent pursuant to sections 442 and 443, the right to collect retroactive child support is conclusively established in Maine's paternity statutes. 19 M.R.S.A. § 271 *et seq.* Under section 272,

---

**9.** Section 448 provides:
The obligee may enforce his right of support against the obligor, pursuant to chapter 14–A, and the State or any political subdivision thereof may proceed on behalf of the obligee to enforce his right of support against the obligor. Whenever the State or a political

subdivision thereof furnishes support to an obligee, it has the same right as the obligee to whom the support was furnished, for the purpose of securing reimbursement and of obtaining continuing support.
19 M.R.S.A. § 448.

once paternity has been determined or acknowledged, a mother has a right to enforce the father's obligation to share in the "reasonable expenses of pregnancy, confinement, education, necessary support or funeral expenses" for the child.[10] This obligation may be enforced retroactively for a period of up to six years preceding the commencement of an action for enforcement. 19 M.R.S.A. § 273.[11] The existence of a right to retroactive child support in the paternity statutes was confirmed in a recent decision by the Maine Supreme Judicial Court. In *Jack v. Department of Human Services*, 556 A.2d 1093, 1095 (Me. 1989), the court rejected a father's contention that it was unfair for DHS to assert a debt six years prior to the commencement of an action. The court stated:

> Jack, as the acknowledged father of Melissa, has had a duty at all times to support his child. The fact that [DHS] did not determine Jack's obligation for that support until recently does not render that determination "fundamentally unfair." [DHS] by statute is limited to recovery of past support accrued within six years of commencement of the action and [its] assertion of this accrued liability no more violates Due Process than does the 6-year statute of limitations on recovery of any money debt.

*Id.* (citations omitted).

Thus, we think it is clear that Dawn Frasier had a right to be reimbursed for past necessary support she expended on behalf of Mushero's children for up to six years prior to the commencement of an action. When Frasier assigned her child support rights to the State of Maine as a condition of AFDC eligibility, this right accrued to the state. Under section 272, AFDC benefits are considered "necessary support." 19 M.R.S.A. § 272. DHS, therefore, had the right—derived from Dawn Frasier's right—to be reimbursed for the AFDC benefits it expended on behalf of Mushero's children.

■ Mushero argues that, where paternity is not at issue, section 272 can not be read to provide a cause of action for custodial mothers to collect retroactive child support but not for custodial fathers, because this would be discrimination on the basis of gender in violation of the Equal Protection Clause of the United States Constitution. Because statutes should be construed to avoid constitutional problems, *DeBartolo Corp. v. Florida Gulf Coast Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988), Mushero asserts that section 272 should be construed as not providing a cause of action for retroactive child support to either parent where paternity is not at issue.[12] Mushero's construction of the statute, while avoiding possible unconstitutionality, is without support. First, the language of the statute as well as the Maine Supreme Judicial Court's interpretation in *Jack*, discussed *supra*, establish that the Maine legislature intended that fathers, at least, are obligated to reimburse mothers for the necessary support expended on behalf of their children.

Second, a more plausible construction of the statute is available that would effec-

---

**10.** Section 272 provides in pertinent part:

Paternity may be determined upon the complaint of the mother, alleged father, child or the public authority chargeable by law with the support of the child. If paternity has been determined or has been acknowledged according to the laws of the State, the liabilities of the father may be enforced in the same proceedings by the mother, child or the public authority which has furnished or may furnish the reasonable expenses of pregnancy, confinement, education, necessary support or funeral expenses. Aid to Families with Dependent Children benefits expended, pursuant to Title 22, chapter 1053, on behalf of the moth-

er by the public authority shall be considered necessary support for the child.
19 M.R.S.A. § 272.

**11.** Section 273 provides that "[t]he father's liabilities for past education and necessary support are limited to a period of 6 years next preceding the commencement of an action." 19 M.R.S.A. § 273.

**12.** Where paternity is at issue, plaintiff argues that the gender classification withstands constitutional muster because the classification is substantially related to the achievement of the important government objective of providing compensation for the period of time during which a father is denying paternity.

tively avoid a potentially unconstitutional interpretation. It may well be that a statute imposing an obligation on non-custodial fathers to pay retroactive child support without imposing a corresponding obligation on non-custodial mothers is susceptible to challenge. *See Orr v. Orr,* 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979) (statute providing that husbands but not wives had to pay alimony violated the Equal Protection Clause of the Fourteenth Amendment); *Califano v. Westcott,* 443 U.S. 76, 84, 99 S.Ct. 2655, 2660, 61 L.Ed.2d 382 (1979). For this reason, the Maine Supreme Judicial Court in *Wellman v. Dept. of Human Services,* 574 A.2d 879 (Me.1990), addressing a similar, though not identical, equal protection challenge to section 272, declined to interpret the statute as burdening men only. In *Wellman,* the plaintiff challenged the presumption in section 272 that AFDC benefits expended on behalf of a mother, but not a father, shall be considered necessary support for the child. The court "decline[d] to interpret the inclusion of presumption language in section 272 as precluding a corresponding presumption clearly contemplated in the overall statutory scheme, that AFDC payments made to an eligible father or other relative, benefit the child." *Wellman,* 574 A.2d at 884. The court held, therefore, that the presumption that AFDC benefits are necessary support for a child applies in every case, not only when the support is paid to the mother. *Id.*

Consistent with the Maine Supreme Judicial Court's interpretation in *Wellman,* section 272 can also be construed to impose a corresponding obligation on non-custodial mothers to pay and a right for custodial fathers to collect, past necessary support expended on behalf of their children. This construction, because it imposes the same obligation on both mothers and fathers, obviates equal protection concerns.

Such a construction is entirely consistent with the statutory scheme for child support in Maine. The paternity statutes establish that "the father of a child which is or may be born out of wedlock is liable to the same extent as the father of a child born in wedlock...." 19 M.R.S.A. § 271. Fur-

thermore, Maine statutory law and case law make clear that a mother is obligated to support her child to the same extent that a father is so obligated. In *Pendexter v. Pendexter,* the Maine Supreme Judicial Court stated that "[s]upport, as every other duty arising from the relationship of parent and child, is the equal responsibility of both mother and father, to be discharged in accordance with their respective capacity and ability." 363 A.2d 743, 749 (Me.1976). In a later case the court elaborated that "[t]he opinion of this court in *Pendexter* rejected the traditional rule imposing primary child support liability on the father as an outmoded distinction predicated on an archaic stereotype in which the mother played a dependent role in the allocation of family responsibilities." *Wood v. Wood,* 407 A.2d 282, 284 (Me.1979). Finally, in *Wellman,* the court asserted that

> Under 19 M.R.S.A. § 443, a woman has an obligation *identical* to that of a man to support her child, and she may be required under sections 495 and 498 to reimburse [DHS] for AFDC payments made on behalf of the child, even if made to the father of the child to whom she was never married and to whom she has no separate duty to support.

*Wellman,* 574 A.2d at 883 (emphasis added).

Given that the paternity statutes provide that a father's obligation is the same whether or not his child is born out of wedlock, and that Maine statutory law and case law provide that a mother's child support obligation is identical to a father's obligation, it is logical to conclude that to the extent that fathers have an obligation under section 272 to pay retroactive child support mothers do also. Thus, as the court concluded in *Wellman,* there has been no violation of plaintiff's equal protection rights in this case by virtue of the application of section 272.

### C. *Certification of State Law Issue*

■ Absent a finding that Maine law does not create an obligation to pay retroactive child support where no formal order exists, Mushero urges this court to certify

the issue to the Maine Supreme Judicial Court. A question of state law that arises in federal court may be certified to the Maine Supreme Judicial Court if "there are no clear controlling precedents in the decisions" by that court. 4 M.R.S.A. § 76B(a). Here the state law question was whether under Maine law a custodial parent has a right to be reimbursed by a non-custodial parent for child support expended prior to the formal establishment of a support obligation. As established in section (B) *supra*, we find that Maine statutory law, and the Supreme Judicial Court's decision in *Jack v. Dept. of Human Services*, make clear that in Maine, a custodial parent has a right to collect retroactive child support from a non-custodial parent. Consequently, there is no need to certify this issue to the Maine Supreme Judicial Court.

### D. Prejudice to Non–AFDC Families

■ Mushero argues next that if Maine law gives a custodial parent the right to collect child support prior to the entry of a support order, then Maine's AFDC program runs afoul of Federal law which requires a State to provide the same support enforcement services to non-AFDC families that it provides to AFDC families. 42 U.S.C. § 654(6)(A).[13] According to Mushero, the administrative proceedings available to AFDC families in section 498 for establishing a support debt for periods prior to the entry of a support order are not available to non-AFDC families under section 498–A. 19 M.R.S.A. §§ 498 and 498–A.[14] We need not pursue this argument because we find that Mushero has no standing to make it.

If in fact Maine's AFDC program provides an additional administrative remedy for AFDC families to collect child support that is unavailable to non-AFDC families, then it is the non-AFDC families who are aggrieved by this alleged violation of federal law. They are deprived of an additional avenue for collecting support that is due to them from non-custodial parents. Mushero, on the other hand, as a non-custodial parent from whom collection is sought by an AFDC family, cannot claim he is harmed by the absence of an administrative remedy for non-AFDC families to collect retroactive child support. Because there is no harm to Mushero from the alleged violation, he has no standing to raise this as a defense to the debt assessed against him. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982).

### E. Legislative Intent

■ Mushero's final argument is that the federal AFDC program did not contemplate the collection of retroactive child support and that, therefore, Maine cannot use AFDC to collect such support. We find this argument without merit. The legislative history surrounding the assignment of child support rights as a condition of AFDC eligibility indicates that Congress contemplated that the assigned child support rights may include support obligations that have not been reduced to judgment. S.Rep. No. 1356, 93rd Cong., 2nd Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 8133, 8146 ("[t]he Committee believes that all children have the right to

---

**13.** Section 654 provides in pertinent part that: A State plan for child and spousal support must—
 (6) provide that (A) the child support collection or paternity determination services established under the plan shall be made available to any individual not otherwise eligible for such services upon application filed by such individual with the State, including, at the option of the State, support collection services for the spouse (or former spouse)....
42 U.S.C. § 654(6)(A).

**14.** Section 498–A applies to non-AFDC families and provides an administrative procedure for

establishing a *current* support obligation in the absence of a court order. 19 M.R.S.A. § 498–A. Section 498, on the other hand, applies to AFDC families for whom no current court order for support exists, and provides an administrative procedure for establishing a current support obligation as well as a parent's AFDC debt accrued under section 495. 19 M.R.S.A. § 498. As discussed *supra*, however, non-AFDC families can obtain retroactive support in a court proceeding pursuant to section 272. 19 M.R.S.A. § 272.

receive support from their fathers. The Committee bill ... is designed to help children attain this right, including the right to have their fathers identified so that support can be obtained."). Moreover, Congress intended to give States a lot of flexibility in administering AFDC programs: "The Committee bill provides that the States would have maximum freedom to determine what services they will make available, the persons eligible for such services, the manner in which such services are provided, and any limitations or conditions on the receipt of such services." *Id.* at 8138. We find nothing in the legislative history that would indicate an intent to prohibit states from collecting retroactive child support obligations in connection with the grant of AFDC benefits.

## III. CONCLUSION

For the reasons stated above we affirm the district court and hold that the Maine AFDC scheme does not deprive plaintiff class of their federal rights in violation of 42 U.S.C. § 1983. Dawn Frasier, a custodial parent, had a right under Maine law to be reimbursed by Mushero for child support expended on behalf of their children prior to the establishment of a support obligation. Pursuant to federal and state law, she assigned her support rights to the state as a condition of AFDC eligibility. The state, therefore, had a right to be reimbursed for the necessary support it gave Mushero's children in the form of AFDC benefits. It appropriately sought to enforce this right by intercepting Mushero's federal income tax refund pursuant to 42 U.S.C. § 664(a).

*Affirmed. No Costs.*