2003 ME 15

## DEPARTMENT OF HUMAN SERVICES o/b/o Carmen O'LEARY

v.

## Michael HAFFORD.

Supreme Judicial Court of Maine.

Submitted on Briefs: Oct. 31, 2002.
Decided: Feb. 4, 2003.

G. Steven Rowe, Attorney General, Michael G. Keefe, Asst. Attorney General, Augusta, for plaintiff.

William J. Smith, Van Buren, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] Michael Hafford appeals from the judgment of the District Court (Fort Kent, *Daigle, J.*) concluding that the Department of Human Services (DHS) is entitled to recover a judgment for the back child support that had accrued prior to the time the mother began receiving Aid to Families with Dependent Children (AFDC), the predecessor program to Temporary Aid to Needy Families (TANF).[1] Notwithstanding the mother's affidavit that she had no wish to collect the pre-AFDC back support, the District Court found that, pursuant to 19-A M.R.S.A. §§ 2301 and 1606 (1998),[2] Hafford owed DHS $17,580.34. This sum contained three components:

☐ $9,452.00 for "past necessary support" accruing while the mother was receiving AFDC/TANF,

☐ $7,394.22 for "past necessary support" accruing prior to the time the mother was receiving AFDC/TANF, and

☐ $734.12 for the child's medical expenses.

Hafford contends that the award to DHS of $7,394.22 for the pre-AFDC/TANF debt must be vacated.[3]

[¶ 2] Pursuant to 19-A M.R.S.A. §§ 1553 et seq. (1998 & Supp. 2002), Hafford contends that DHS is entitled to past support payments only "to the extent that [DHS] furnished ... support," and that, therefore, DHS's entitlement does not include the past support Hafford owed the mother accruing before DHS was providing benefits. 19-A M.R.S.A. § 1553 (1998).[4] Be-

---

1. TANF was enacted in 1996.

2. Because it is the current law and the District Court cited to the provisions of Title 19-A, we will do so throughout this opinion. However, Title 19, which Title 19-A replaced, was in effect when Carmen O'Leary began receiving AFDC benefits. Therefore, for reference, we provide below the corresponding sections of Title 19. Effective October 1, 1997, Title 19 was repealed in its entirety by P.L.1995, ch. 694, § B-1. There is no substantive difference between Titles 19 and 19-A in the sections relevant to the present action.

| Section 19-A | Section 19 |
| --- | --- |
| 1503 | 220 |
| 1504 | 443-A |
| 1505 | 444 |
| 1552 et seq. | 271 et seq. |
| 1553 | 272 |
| 1553 et seq. | 272 et seq. |
| 1554 | 273 |
| 1606 | 522 |
| 2102 | 448 |
| 2301 | 495 |
| 2304 | 497-B |
| 2369 | 512 |
| 2401 | 513 |

3. As of January 19, 2000, the Department actually paid out a total of $17,651 in AFDC/TANF payments to benefit the child since June 1995. Hafford was credited with $3,120 for child support he paid during the 1995-97 period.

4. Section 1553 states in relevant part:
   If paternity has been determined or has been acknowledged according to the laws

cause no court order of support had been established when DHS brought its action, Hafford reasons that 19–A M.R.S.A. § 2301(1)(A) [5] limits DHS's right to recover past support to the period DHS actually provided support. Instead, citing 19–A M.R.S.A. § 2301(1)(B), [6] he argues that DHS would be entitled to the debt only if a court had ordered support. Also, Hafford contends that when O'Leary applied for AFDC in July 1995 and assigned her rights for unpaid support according to section 2369, [7] no debt had been established, and therefore, there was no debt to be assigned by her application. Finally, Hafford contends that DHS has no right to collect money on behalf of the mother that she has expressly waived.

[¶ 3] We conclude that both the father's child support obligation and the mother's right to enforce it attach at the child's birth, whether or not a child support order exists; Hafford had a statutory obligation to support his son during the mother's pre-public assistance period but did not fulfill it; by applying for public assistance, the mother assigned her right to enforce that claim to the State and, thus, no longer has the power to waive it, and the granting of public assistance entitles the State to seek reimbursement for all unpaid support owed to the grantee. We therefore affirm.

## I. BACKGROUND

[¶ 4] Hafford's son was born on October 15, 1988. Carmen O'Leary, the mother, supported their son without public assistance until August 1995, when she began receiving AFDC. The parents had no support agreement.

[¶ 5] On January 2, 1997, DHS sought a determination of paternity and the estab-

---

of this State, the liabilities of the father may be enforced in the same or other proceedings by the mother, the child or the public authority that has furnished or may furnish the reasonable expenses of pregnancy, confinement, education, support or funeral expenses, and by other persons, including private agencies, to the extent that they have furnished the reasonable expenses of pregnancy, confinement, education, support or funeral expenses.
19–A M.R.S.A. § 1553 (1998).

5. Section 2301(1)(A) states in relevant part:
When a support order has not been established, a payment of public assistance for the benefit of the dependent child creates a debt due the department from the responsible parent for past support. The amount of debt due the department is established by application of the most current child support scale to the responsible parent's income for the time period in which the department was entitled to support payments.
Id. § 2301(1)(A).

6. Section 2301(1)(B) states:
When a support order has been established, the debt due the department from the responsible parent is the amount established under that order.

(1) The debt may not be limited by the amount of public assistance paid for the benefit of the dependent child. Amounts collected by the department in excess of public assistance expended must be distributed pursuant to section 2401.
(2) The issuance of a support order does not relieve the responsible parent of any liability for a debt that previously had accrued under paragraph A.
Id. § 2301(1)(B).

7. Section 2369, entitled "Assignment of right of support enforcement," states:

The receipt of public assistance for a child constitutes an assignment by the recipient to the department *of all rights to support* for the child and spousal support, including any support unpaid at the time of assignment, as long as public assistance is paid.
The recipient is deemed to have appointed the commissioner as the recipient's attorney in fact to perform the specific act of endorsing over to the department all drafts, checks, money orders or other negotiable instruments for support of the child.
Id. § 2369 (1998 & Supp. 2002) (emphasis added).

lishment of a child support order pursuant to 19–A M.R.S.A. §§ 1552 et seq. (1998 & Supp. 2002), asking the court to establish that Hafford is the son's natural father and to order him to pay child support directly to the State whenever the mother receives public assistance on the son's behalf and "to reimburse the State of Maine for the past support, birth expenses and medical expenses incurred" on the son's behalf. On January 31, 2000, the court entered a paternity order and judgment and a child support order against Hafford for prospective support, but "reserve[d] the issues of past necessary support, including public assistance, ... for [a] future hearing." Prior to that hearing, both parties submitted briefs on "whether the Department is subrogated to any child support debt owed by Michael Hafford for the support of [his son] for the period prior to [when] Carmen O'Leary [began] receiving [AFDC] on behalf of the child." In October 2001, O'Leary filed with the court an affidavit waiving any claims against Hafford "for child support benefits for periods prior to August 1995 to the extent permitted by law."

## II. DISCUSSION

[¶ 6] To determine whether DHS had a right to collect child support for Hafford's son for the period before it began paying AFDC to the child's mother, we consider two issues:

[¶ 7] First, is Hafford's obligation to support his child a debt that arose automatically by operation of law when his son was born, as DHS contends, or, as Hafford contends, must the debt be established by a court order or an agreement between him and O'Leary in order to become an assignable debt?

[¶ 8] Second, if O'Leary had a "right" to child support absent an order or agreement, was she then entitled to waive that right six years after assigning the right to DHS when she applied for and began receiving AFDC?

[¶ 9] Pursuant to federal requirements,[8] Maine enacted 19–A M.R.S.A. § 1552 et seq., specifying a father's child support responsibilities. Section 1554 limits "[t]he father's liabilities for past education and support" to six years.[9] 19–A M.R.S.A. § 1554 (1998). If paternity is in doubt, "the mother, the alleged father ... or the public authority chargeable by law with the support of the child" may seek to establish paternity. Id. § 1553. Once paternity has been acknowledged or established, however, "[t]he obligee may enforce the right of support against the obligor.... When the State ... furnishes support to an obligee, it has the same right as the obligee to whom the support was furnished, for the purpose of securing an award for past support...." Id. § 2102. Finally, section 2369 spells out the quid pro quo exchange of AFDC for an assignment of "all rights to support for the child." Id. § 2369 (1998 & Supp. 2002).

8. The federal government requires that to receive public assistance, an applicant must assign to the state all rights to support that have, at the time of assignment, accrued to the applicant or to a family member for whom the applicant is applying for aid. 42 U.S.C.A. § 608(a)(3) (1991 & Supp. 2002). The federal statute specifies that the amount assigned to the state must either be spelled out in a court order or, if there is no court order, "an amount determined by the State in accordance with a formula approved by the

[federal government]." Id. § 656(a)(2). Here, the support obligation can be calculated by formula. See 19–A M.R.S.A. §§ 1552 et seq. (1998 & Supp. 2002).

9. According to section 1552, fathers of children who are born out of wedlock are liable to the same extent as those whose children are born within a marriage. Id. § 1552 (1998).

[¶ 10] Not only is a father obligated to support his child born in or out of wedlock, but sections 1503,[10] 1504,[11] and 1505 [12] together indicate that a father's duty to support his child attaches at the child's birth, and sections 2301 and 2304 [13] indicate that this duty exists even when the parents do not have a support agreement.

[¶ 11] In our interpretation of the statutes, we have repeatedly endorsed the father's support obligation and the requirement that he reimburse the mother for her support of their children. *See, e.g., Dep't of Human Servs. v. Sabattus*, 683 A.2d 170, 172 (Me.1996) (biological father "owes a duty of support" to his out-of-wedlock child); *Dep't of Human Servs. v. Look*, 606 A.2d 203, 204–05 (Me.1992) (mother is entitled to receive child support help from the father for the period before she received AFDC); *Jack v. Dep't of Human Servs.*, 556 A.2d 1093, 1095 (Me.1989) (acknowledged father "has had a duty at all times to support his child"); *Dep't of Human Servs. o/b/o Young v. Leifester*, 1998 ME 266, ¶ 9, 721 A.2d 189, 192 ("Maine's substantive law regarding paternity and child support is the Uniform Act on Paternity, which ... allows the court to order past child support....") (citations omitted); *Dep't of Human Servs. v. Bell*, 1998 ME 123, ¶¶ 1, 5, 711 A.2d 1292, 1294 (affirming DHS's right to seek child support from father for the six years prior to notice of paternity). *See also*, the First Circuit holding in *Mushero v. Ives*, 949 F.2d 513, 519 (1st Cir.1991) ("[T]he language of the statute [19 M.R.S.A. § 272 (now 19–A § 1553)] as well as the Maine Supreme Judicial Court's interpretation in *Jack* ... establish that the Maine legislature intended that fathers ... are obligated to reimburse mothers for the necessary support expended on behalf of their children").

[¶ 12] If there *is* a support order, DHS has the right to collect "the debt due the department from the responsible parent," 19–A M.R.S.A. § 2301(1)(B), and the absence of a support order does not affect DHS's right to collect, *id.* § 2304 (Supp. 2002). In contending that DHS is not entitled to collect past support owed the mother, Hafford misinterprets section 1553. Contrary to his contention, a public agency that "has furnished or *may* furnish ... support" may "enforce" the liabilities of the father, while a private agency may recover only the amounts it has actually furnished. *Id.* § 1553 (1998) (emphasis added).

---

10. Section 1503 reads: "A child born out of wedlock is the child of that child's biological parents and is entitled to the same legal rights as a child born in lawful wedlock, except as otherwise expressly provided by statute." *Id.* § 1503.

11. Section 1504 reads: "A person shall support that person's child and that person's spouse when in need." *Id.* § 1504.

12. Section 1505 reads: "An obligor present or resident in this State has the duty of support as defined in this chapter regardless of the presence or residence of the obligee." *Id.* § 1505.

13. Section 2304 reads in pertinent part:
When a support order has not been established, the department may establish the responsible parent's current parental support obligation ... [and] establish the responsible parent's debt for past support ... for each dependent child.... The department may proceed on its own behalf or on behalf of ... an individual ... applicant for services under section 2103 [Duty of department to enforce support obligations] or a person entitled by federal law to support enforcement services as a former recipient of public assistance.... For purposes of this section, "debt for past support" includes a debt owed to the department under section 2301, subsection 1, paragraph A, a debt owed under section 2103 and a debt that accrues under sections 1504 and 1554. *Id.* § 2304 (Supp.2002).

[¶ 13] In *Mushero,* the First Circuit held both that the father is obligated to support his child and that DHS has a right to recover that support as a condition of granting public assistance. *Mushero,* 949 F.2d at 518–19. The *Mushero* court held that "[u]nder Maine law, all parents have a general duty to support their children. This duty exists whether or not a court or administrative order exists establishing a formal obligation." *Id.* at 518 (citations omitted). The mother's right to be reimbursed for her past support of the father's children accrued to the State when the mother assigned her child support rights to the State as a condition of AFDC eligibility. *Id.* at 519. "Under section 272, AFDC benefits are considered 'necessary support.' 19 M.R.S.A. § 272 [now 19–A § 1553]. DHS, therefore, had the right— derived from [the mother's] right—to be reimbursed for the AFDC benefits it expended on behalf of [the father's] children." *Id.*

[¶ 14] O'Leary, like the mother in *Mushero,* "[p]ursuant to federal and state law, ... assigned her support rights to the state as a condition of AFDC eligibility. The state, therefore, had a right to be reimbursed for the necessary support it gave [her] children in the form of AFDC benefits. It appropriately sought to enforce this right...." *Id.* at 522. Having previously assigned her claim to DHS, her subsequent waiver is a nullity. We do not here address the question of whether DHS may retain any funds it collects in excess of the amount it has paid out.[14]

The entry is:

Judgment affirmed.

14. *See id.* §§ 2301(B)(1), 2401 (1998).