2009 ME 83

**Richard E. HAMILTON Jr.**

v.

**Kellie M. HAMILTON et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: July 8, 2009.

Decided: Aug. 6, 2009.

Richard E. Hamilton, Jr., Auburn, ME, pro se.

Janet T. Mills, Attorney General, Carlos Diaz, Asst. Atty. Gen., Maine Office of Attorney General, Portland, ME, for the Maine Department of Health and Human Services.

Panel: SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, and GORMAN, JJ.

ALEXANDER J.

[¶ 1] Richard E. Hamilton Jr. appeals from a judgment of the District Court (Portland, *Powers, J.*) ordering him to pay child support to Kellie M. Hamilton[1] for the parties' two minor children after the Department of Health and Human Services (DHHS) objected to the financial terms of the mediated agreement reached by the parties. Richard contends that: (1) the Maine courts lacked jurisdiction pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), 19–A M.R.S. §§ 1731–1783 (2008); (2) the court should have awarded him the child support arrearage owed to him by Kellie; (3) the court erred in calculating his child support obligation; and (4) his rights to equal protection and due process were violated. We affirm the judgment.

## I. CASE HISTORY

[¶ 2] Richard and Kellie Hamilton were divorced in 2002. The divorce judgment entered in the District Court (*Bradley, J.*) ordered shared parental rights and responsibilities and awarded primary physical residence of the parties' two minor children to Richard. Kellie was ordered to pay child support to Richard in the amount of thirty dollars per week.

[¶ 3] In June 2005, Richard moved with the children to Florida. At that time, the parties apparently agreed that the children would live with Richard during the school year and would return to live with Kellie in Maine for their December school vacation and for their summer vacation. Richard agreed to pay the transportation costs for the children's travel between Florida and Maine. Neither party filed a motion to amend the divorce judgment to reflect this new arrangement.

[¶ 4] In December 2007, the children came to Maine to spend their school vacation with Kellie, but Richard did not provide tickets for the children's return flight to Florida. On January 15, 2008, Kellie filed a motion to modify the parties' divorce judgment to obtain primary physical residence of the children, alleging both that the children wanted to remain with her and that they were unable to return to Florida because Richard had failed to provide the plane tickets.

[¶ 5] Richard later filed a motion to dismiss Kellie's motion to modify on the grounds that Florida was the children's home state pursuant to the UCCJEA, 19–A M.R.S. § 1732(7), and therefore the Maine courts lacked jurisdiction. He contended that the best evidence established that the children's place of residence was Florida, that Kellie was in violation of the parties' divorce judgment as a result of her failure to return the children to Florida, and that Florida was a more convenient forum. Richard notified the District Court that he had filed a petition to register and enforce the Maine divorce judgment in the Florida Circuit Court. Richard also filed a

---

1. Kellie Hamilton did not participate in this appeal. The Department of Health and Human Services is an intervenor and appears as the appellee.

motion to enforce the parties' divorce judgment, seeking that the children be returned to him and that Kellie be ordered to pay child support and arrears.

[¶ 6] After a preliminary hearing, the court (*Oram, M.*) entered an interim order addressing Kellie's motion to modify and Richard's motion to enforce. The court determined that the children would remain with Kellie in Maine until the end of the school year, at which point they would return to Florida, and temporarily suspended Kellie's child support obligation. The court also noted that the parties had agreed to have their motions heard in Maine on an interim basis, but that the Maine and Florida courts would confer on the jurisdictional issues.

[¶ 7] Following a conference with a Florida Circuit Court judge, the District Court (*Beaudoin, J.*) issued an order denying Richard's motion to dismiss for lack of jurisdiction. The order stated that the courts had tentatively agreed that Maine had continuing exclusive jurisdiction, contingent upon a determination of whether Maine was an inconvenient forum. The District Court explained that Maine had "continuing exclusive jurisdiction because the original custody determination was made in Maine ... and because [Kellie] resides in Maine and the children continue to have a significant connection with Maine."

[¶ 8] In determining whether Maine was an inconvenient forum pursuant to 19-A M.R.S. § 1751(2), the court considered: (1) Richard's offer of proof asserting that there were at least thirty-eight witnesses in Florida who could present significant information concerning Richard and the children; (2) that the children and some of their medical providers were in Maine; (3) that the Maine courts had held hearings on the case; and (4) that there was no indication that the Florida courts could act more expeditiously than the Maine courts. After considering these and the other factors listed in section 1751(2), the District Court determined that Maine was not an inconvenient forum.

[¶ 9] The parties then proceeded to mediation, and on July 29, 2008, with the assistance of a court-appointed guardian ad litem, reached an agreement on both financial and non-financial issues. They agreed that the children's primary residence would be in Maine with Kellie, and that the children would spend their winter vacation and summer vacation with Richard. They also agreed that Kellie would not seek child support from Richard and that Richard would not try to collect unpaid child support from Kellie.

[¶ 10] At the time that the parties entered into their mediated agreement: (1) Kellie was collecting Temporary Assistance for Needy Families (TANF) through DHHS, and (2) Richard's MySpace webpage indicated that his income was in excess of $250,000 a year. DHHS was not notified of the mediation. On August 4, 2008, after learning that Kellie had waived her right to child support while receiving public assistance, DHHS intervened in the case.

[¶ 11] The court (*Powers, J.*) adopted the parties' mediated agreement on the non-financial issues. However, after DHHS objected to the child support provisions of the parties' mediated agreement, the court rejected the pay-no-child-support agreement and scheduled a hearing to address the issues of child support and health insurance. Richard participated in the hearing by telephone from Florida.

[¶ 12] On September 15, 2008, the court entered an order on the financial issues. The order provides that "[b]ecause [Richard] has made it clear to the court he does not wish to pursue any child support claimed against [Kellie]," Kellie's child support obligation was terminated, and she would not be required to pay Richard any

child support arrearage. The court then computed Richard's child support obligation. Although Richard asserted that his expected income for 2008 was only $10,000, the court concluded that he was able to earn more and imputed to him an income of $13,600 using the federal full-time minimum wage of $6.55 per hour.[2] Kellie's expected income was found to be $11,000. Based on these amounts, Richard was ordered to pay child support of sixty-one dollars per week to DHHS on Kellie's behalf. He was also ordered to pay twenty dollars per week toward the arrearage that had been accruing since Kellie began receiving TANF. Richard then filed this appeal.

## II. LEGAL ANALYSIS

[¶ 13] Richard raises many issues on appeal. The only two that merit discussion are: (1) the resolution of the court's jurisdiction to hear the motions, and (2) the court's authority to reject the mediated agreement and to require Richard to pay child support.[3]

### A. Jurisdiction to Hear the Motions

▮ [¶ 14] Richard argues that the Maine courts did not have jurisdiction over the parties' child custody dispute. He contends that the District Court failed to properly consider the factors required for a determination of whether Maine is an inconvenient forum. Richard also asserts that he should have been afforded an opportunity to present facts and argument on the issue of jurisdiction after the communication between the Maine and Florida courts, but before a decision was made.

▮ [¶ 15] The jurisdiction of Maine courts to hear a claim is a question of law that we review de novo. *Campbell v. Mar-*

*tin,* 2002 ME 112, ¶ 6, 802 A.2d 395, 397. Jurisdictional questions in child custody disputes are controlled by the UCCJEA, 19–A M.R.S. §§ 1731–1783, and the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C.S. § 1738A (LexisNexis 2003). *Cole v. Cushman,* 2008 ME 72, ¶ 6, 946 A.2d 430, 433. The PKPA preempts the UCCJEA if the statutes conflict, but in all other circumstances the statutes are considered in conjunction with one another. *Id.*

[¶ 16] Pursuant to the PKPA, a state court that initially issues a child custody order has exclusive, continuing jurisdiction of future custody matters "as long as the requirement of subsection (c)(1) of this section [requiring that the State have jurisdiction under its own laws] continues to be met and such State remains the residence of the child or of any contestant." 28 U.S.C.S. § 1738A(d); *Cole,* 2008 ME 72, ¶ 9, 946 A.2d at 433. Maine statutes permit Maine courts to retain exclusive, continuing jurisdiction until:

> A. A court of this State determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this State and that substantial evidence is no longer available in this State concerning the child's care, protection, training and personal relationships; or
>
> B. A court of this State or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this State.

19–A M.R.S. § 1746(1). However, pursuant to the UCCJEA, a Maine court may decline to exercise its jurisdiction "if it determines that it is an inconvenient forum

---

2. The court apparently did not find credible Richard's MySpace claim of income in excess of $250,000.

3. Because there is no transcript, we assume that the record supports the facts found by the court. *Jefts v. Dennis,* 2007 ME 129, ¶ 7, 931 A.2d 1055, 1057.

under the circumstances and that a court of another state is a more appropriate forum." 19–A M.R.S. § 1751(1).

[¶ 17] In order to assess whether Maine is an inconvenient forum, the UC-CJEA requires courts to "allow the parties to submit information" and to consider all relevant factors, including those listed in 19–A M.R.S. § 1751(2).[4] Although the court must consider each of these statutory factors, the court is not required to "specifically enumerate [its] findings on each factor." *Shanoski v. Miller*, 2001 ME 139, ¶ 25, 780 A.2d 275, 280. Rather, the trial court is required to make findings that are sufficient to inform the parties of the court's reasoning and to provide for effective appellate review. *Id.* A court's decision to exercise jurisdiction or to decline to exercise jurisdiction for reason of an inconvenient forum is reviewed for an abuse of discretion. *See Cole*, 2008 ME 72, ¶ 10, 946 A.2d at 434; *Alley v. Parker*, 1998 ME 33, ¶ 6, 707 A.2d 77, 79.

[¶ 18] In this case, Maine had continuing jurisdiction subject to a determination of whether Maine was an inconvenient forum. The District Court did not abuse its discretion in determining that Maine was not an inconvenient forum based on the statutory factors listed in section 1751(2),

and specifically based on the facts that the children were in Maine, some of their medical providers were in Maine, and the Maine courts where the divorce originated were familiar with the case.

**B. Court Rejection of Mediated Agreement and Imposition of Child Support Obligation**

[¶ 19] A court hearing a divorce or post-judgment motion is not bound to accept the terms of any agreement reached in mediation. A court may reject any or all portions of an agreement that it deems is not in the best interests of the parties or their children, is not in the public interest, or is contrary to law.

[¶ 20] Richard asserts that DHHS engaged in unconstitutional selective enforcement by "scuttling" the mediated agreement and aggressively pursuing a child support order against him, while doing nothing to enforce the child support arrears owed to him by Kellie.

[¶ 21] Although Kellie agreed at mediation that Richard would not have to pay any child support to her, she had previously assigned her right to child support to the State of Maine based on her receipt of public assistance (TANF) for the parties' minor children.[5] DHHS was not a party

---

4. The factors listed in 19–A M.R.S. § 1751(2) (2008) are:

  **A.** Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

  **B.** The length of time the child has resided outside this State;

  **C.** The distance between the court in this State and the court in the state that would assume jurisdiction;

  **D.** The relative financial circumstances of the parties;

  **E.** Any agreement of the parties as to which state should assume jurisdiction;

  **F.** The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

  **G.** The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

  **H.** The familiarity of the court of each state with the facts and issues in the pending litigation.

5. *See* 19–A M.R.S. § 2102 (2008), which provides, "[w]hen the State or a political subdivision of the State furnishes support to an obligee, it has the same rights as the obligee to whom the support was furnished, for the purpose of securing an award for past support and of obtaining continuing support." *See also* 19–A M.R.S. § 2369 (2008).

to, and therefore was not bound by, the settlement agreement reached between Richard and Kellie at mediation. *See Dep't of Human Servs. v. Hafford,* 2003 ME 15, ¶ 14, 815 A.2d 806, 811 (holding that because the custodial parent assigned her right to child support to the State based on her receipt of public assistance, her subsequent waiver of that right was "a nullity" and did not bind DHHS). Accordingly, DHHS had the right to object to the mediated agreement to the extent that it purported to waive Richard's legal duty to pay child support while Kellie received TANF.

[¶ 22] The State of Maine has the right to receive child support from any parent who is not providing primary residence to a child while the child receives TANF. 19–A M.R.S. §§ 2102, 2369 (2008). Richard was not receiving TANF while this case was pending, and thus he and Kellie were not similarly situated for purposes of child support enforcement. Although Maine law authorizes DHHS to enforce a child support obligation on behalf of a parent who does not receive TANF, Richard did not apply for such services. *See* 19–A M.R.S. § 2103 (2008). In fact, any legal duty Kellie may have had to pay child support was suspended, as she was an "assisted obligor" while receiving TANF. *See* 19–A M.R.S. § 2302(1)(A), (2) (2008).

[¶ 23] Richard also argues that the court erred in concluding that he owes a child support arrearage. He contends that his obligation should have started on September 10, 2008, when the court issued its order and should not have been retroactive to March 1, 2008, when Kellie began receiving TANF.

[¶ 24] Title 19–A M.R.S. § 2301(1) (2008) provides: "When a support order has not been established, a payment of public assistance for the benefit of the dependent child creates a debt due the department from the responsible parent

for past support." Pursuant to section 2301(1), Richard's child support obligation began to accrue on the day that Kellie began to receive public assistance. Accordingly, the court properly determined that Richard owes DHHS sixty-one dollars per week beginning on the date when Kellie began to receive TANF benefits.

The entry is:

Judgment affirmed.